CENTER FOR DISABILITY ACCESS
Ray Ballister, Jr., Esq., SBN 111282
Russell Handy, Esq., SBN 195058
Phyl Grace, Esq., SBN 171771
Dennis Price, Esq., SBN 279082
Elliott Montgomery, Esq., SBN 279451
Mail: PO Box 262490
San Diego, CA 92196-2490
Delivery: 9845 Erma Road, Suite 300
San Diego, CA 92131
(858) 375-7385; (888) 422-5191 fax
phylg@potterhandy.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**Tim Crowley**,

Plaintiff,

v.

**Gel-Mark Investments, LLC,** a California Limited Liability Company;
**Arman Corporation,** a California Corporation; and Does 1-10,

Defendants.

**Case No**. 5:17-CV-01648-DMG-KK

**First Amended Complaint For Damages And Injunctive Relief For Violations Of:** American's With Disabilities Act; Unruh Civil Rights Act

Plaintiff Tim Crowley complains of Defendants Gel-Mark Investments, LLC, a California Limited Liability Company; Arman Corporation, a California Corporation; and Does 1-10 ("Defendants"), and alleges as follows:

**PARTIES:**

1. Plaintiff is a California resident with physical disabilities. He is a paraplegic who uses a wheelchair for mobility.

2. Defendant Gel-Mark Investments, LLC owned the real property

located at or about 301 Countyline, Calimesa, California, in July 2017.

3. Defendant Gel-Mark Investments, LLC owns the real property located at or about 301 Countyline, Calimesa, California, currently.

4. Defendant Arman Corporation owned the 7-Eleven located at or about 301 Countyline, Calimesa, California, in July 2017.

5. Defendant Arman Corporation owns the 7-Eleven store ("Store") located at or about 301 Countyline, Calimesa, California, currently.

6. Plaintiff does not know the true names of Defendants, their business capacities, their ownership connection to the property and business, or their relative responsibilities in causing the access violations herein complained of, and alleges a joint venture and common enterprise by all such Defendants. Plaintiff is informed and believes that each of the Defendants herein, including Does 1 through 10, inclusive, is responsible in some capacity for the events herein alleged, or is a necessary party for obtaining appropriate relief. Plaintiff will seek leave to amend when the true names, capacities, connections, and responsibilities of the Defendants and Does 1 through 10, inclusive, are ascertained.

**JURISDICTION & VENUE:**

7. The Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1331 and § 1343(a)(3) & (a)(4) for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq.

8. Pursuant to supplemental jurisdiction, an attendant and related cause of action, arising from the same nucleus of operative facts and arising out of the same transactions, is also brought under California's Unruh Civil Rights Act, which act expressly incorporates the Americans with Disabilities Act.

9. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and is founded on the fact that the real property which is the subject of this action is

located in this district and that Plaintiff's cause of action arose in this district.

**FACTUAL ALLEGATIONS:**

10. The Plaintiff went to the Store in July 2017 to shop.

11. The Store is a facility open to the public, a place of public accommodation, and a business establishment.

12. Parking spaces are one of the facilities, privileges, and advantages offered by Defendants to patrons of the Store.

13. Unfortunately, although parking spaces were one of the facilities specifically reserved for patrons, there were no compliant accessible handicap parking spaces available for persons with disabilities that complied with the Americans with Disability Act Accessibility Guidelines (ADAAG) during plaintiff's visit.

14. The parking space reserved for persons with disabilities at the Store did not have a marked and reserved access aisle adjacent to the stall for use by persons with disabilities during plaintiff's visit.

15. Plaintiff has complained to Store personnel a number of times about this issue.

16. Defendants recently repaved the lot but the new parking space reserved for persons with disabilities still does not have a compliant access aisle, as there is not a complete blue border at the head of the aisle.

17. Currently, there are no compliant, accessible parking space designed and reserved for persons with disabilities in the parking lot serving the Store.

18. The defendants had no policy or plan in place to make sure that the accessible parking space reserved for persons with disabilities remained useable prior to plaintiff's visit.

19. The defendants have no policy or plan in place to make sure that the accessible parking space reserved for persons with disabilities remain useable, currently.

20. In addition to not having an access aisle, the parking space has an inaccessible slope that exceeds 2.1%.

21. Plaintiff personally encountered this barrier.

22. This inaccessible parking lot denied the plaintiff full and equal access and caused him difficulty, anger, and frustration.

23. Furthermore, although Plaintiff did not personally confront all of the following barriers, Plaintiff alleges that the parking spaces and path of travel are also not accessible to wheelchair users.

24. Parking spaces are one of the facilities, privileges, and advantages offered by Defendants to patrons of the Store.

25. Portions of the parking space are cracking, creating openings and height differential in the surface.

26. The tow-away sign is not compliant, as it is missing a towing address.

27. Paths of travel are one of the facilities, privileges, and advantages offered by Defendants to patrons of the Store.

28. The path of travel from the parking space is less than 48 inches in clear width for more than 24 inches of its length.

29. The path of travel from the public right of way has a pedestrian ramp. However, the handrail extensions do not continue for a minimum of 12 inches in the same direction as the ramp run at the top and bottom.

30. The ramp does not have a smooth top landing, as there are detectable warnings, often referred to as truncated domes, on the ramp.

31. The bottom landing of the ramp is not level for 72 inches in length.

32. The path of travel from the pedestrian ramp to the entrance is less than 48 inches in clear width for more than 24 inches length, due to a trash can and propane storage blocking the minimum required path of travel.

33. Plaintiff would like to return and patronize the Store but will be deterred from visiting until the defendants cure the violations.

34. The violations identified above are easily removed without much difficulty or expense. They are the types of barriers identified by the Department of Justice as presumably readily achievable to remove and, in fact, these barriers are readily achievable to remove. Moreover, there are numerous alternative accommodations that could be made to provide a greater level of access if complete removal were not achievable.

35. For example, there are numerous paint/stripe companies that will come and stripe a parking stall and access aisle and install proper signage on rapid notice, with very modest expense, sometimes as low as $300 in fully compliance with federal and state access standards.

36. Plaintiff is and has been deterred from returning and patronizing the Store because of his knowledge of the illegal barriers that exist. Plaintiff will, nonetheless, return to the business to assess ongoing compliance with the ADA and will return to patronize the Store as a customer once the barriers are removed.

37. Given the obvious and blatant violation, the plaintiff alleges, on information and belief, that there are other violations and barriers on the site that relate to his disability. Plaintiff will amend the Complaint to provide proper notice regarding the scope of this lawsuit once he conducts a site inspection. However, please be on notice that the plaintiff seeks to have all barriers related to his disability remedied. See *Doran v. 7-11*, 506 F.3d 1191 (9th Cir. 2008) (holding that once a plaintiff encounters one barrier at a site, he can sue to have all barriers that relate to her disability removed regardless of whether he personally encountered them).

38. Additionally, on information and belief, the plaintiff alleges that the failure to remove these barriers was intentional because: (1) these particular barriers are intuitive and obvious; (2) the defendants exercised control and dominion over the conditions at this location and, therefore, the lack of

accessible facilities was not an "accident" because, had the defendants intended any other configuration, they had the means and ability to make the change.

**I. FIRST CAUSE OF ACTION: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990** (On behalf of Plaintiff and against all Defendants.) (42 U.S.C. section 12101, et seq.)

39. Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

40. Under the ADA, it is an act of discrimination to fail to ensure that the privileges, advantages, accommodations, facilities, goods and services of any place of public accommodation is offered on a full and equal basis by anyone who owns, leases, or operates a place of public accommodation. See 42 U.S.C. § 12182(a). Discrimination is defined, inter alia, as follows:

a. A failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the accommodation would work a fundamental alteration of those services and facilities. 42 U.S.C. § 12182(b)(2)(A)(ii).

b. A failure to remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). Barriers are defined by reference to the ADAAG, found at 28 C.F.R., Part 36, Appendix "D."

c. A failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities,

including individuals who use wheelchairs or to ensure that, to the maximum extent feasible, the path of travel to the altered area and the bathrooms, telephones, and drinking fountains serving the altered area, are readily accessible to and usable by individuals with disabilities. 42 U.S.C. § 12183(a)(2).

41. Each accessible parking stall must have an access aisle adjacent to it. Standard accessible parking stalls can have a 60 inch wide access while van accessible stalls must have a 96 inch wide access aisle. 1991 Standards § 4.1.2 (5) (a) & (b) and 2010 Standards § 502.2. The access aisle must extend the full length of the parking spaces it serves. *Id.* at § 502.3.2.

42. Here, the failure to have an access aisle is a violation of the ADA.

43. Any business that provides parking spaces must provide accessible parking spaces. 1991 Standards § 4.1.2(5); 2010 Standards § 208. One in every eight of those accessible parking spaces but not less than one must be a "van" accessible parking space, *i.e.*, having an eight foot access aisle. 1991 Standards § 4.1.2(5)(b). Under the 2010 Standards, one in every six accessible parking spaces must be van accessible. 2010 Standards § 208.2.4.

44. Here, the lack of an accessible parking space is a violation of the law.

45. Under the 1991 Standards, parking spaces must be level with surface slopes not exceeding 1:50 (2%) in all directions. 1991 Standards § 4.6.2. Under the 2010 Standards, no more than a 1:48 slope is permitted for a parking space. 2010 Standards § 502.4.

46. Here the failure to provide level parking is a violation of the law.

47. A public accommodation shall maintain in operable working condition those features of facilities and equipment that are required to be accessible to and useable by persons with disabilities. Isolated or temporary interruptions in service or accessibility due to maintenance or repairs shall be permitted. 28 C.F.R. § 36.211(a); California Business Code ("CBC") §11B-108. Here,

the portions of parking space are cracking creating openings and height differential.

48. An additional sign shall be posted either; 1) in a conspicuous place at each entrance to an off-street parking facility or 2) immediately adjacent to on-site accessible parking and visible from each parking space. CBC §11B-502.8. The additional sign shall clearly state in letters with a minimum height of 1 inch the following:

> "Unauthorized" vehicles parked in designated accessible spaces not displaying distinguishing placards or special license plates issued for persons with disabilities will be towed away at the owner's expense. Towed vehicles may be reclaimed at: ____________________ or by telephoning ___________________."

Blank spaces shall be filled in with appropriate information as a permanent part of the sign. CBC §11B-502.8.2. Here, the tow-away sign is missing the towing address.

49. Except as provided in 403.5.2 and 403.5.3, the clear width of walking surfaces shall be 36 inches minimum. 2010 Standards § 403.5.1; The clear width for sidewalks and walks shall be 48 inches minimum. When, because of right-of-way restrictions, natural barriers or other existing conditions, the enforcing agency determines that compliance with the 48-inch clear sidewalk width would create an unreasonable hardship, the clear width may be reduced to 36 inches. CBC § 11B-403.5.1 exception. Here, the path of travel from the parking space has only 41 inches clear width at the trash can for 24 1/2 inches length.

50. Ramp handrails shall extend horizontally above the landing for 12 inches minimum beyond the top and bottom of ramp runs. Extensions shall return to a wall, guard, or the landing surface, or shall be continuous to the handrail of an adjacent ramp run. 2010 Standards § 505.10.1; CBC § 11B-

505.10.1. Here, the path of travel from the public right of way has a pedestrian ramp. The handrail extensions along the pedestrian ramp turns one side at the top and bottom, and do not continue in the same direction as the ramp run.

51. Landings shall comply with 302. Changes in level are not permitted. 2010 Standards § 405.7.1; CBC § 11B-405.7.1. Here, the ramp does not have a smooth top landing as there are detectable warnings.

52. The landing clear length shall be 60 inches long minimum. 2010 Standards § 405.7.3. Bottom landings shall extend 72 inches minimum in the direction of ramp run. . CBC § 11B-405.7.3.1. Landings shall comply with 302. Changes in level are not permitted. 2010 Standards § 405.7.1; CBC § 11B-405.7.1. Here, the bottom landing of the ramp is not level as the bottom portion of concrete slopes 21 degrees to the asphalt.

53. Except as provided in 403.5.2 and 403.5.3, the clear width of walking surfaces shall be 36 inches minimum. 2010 Standards § 403.5.1; The clear width for sidewalks and walks shall be 48 inches minimum. When, because of right-of-way restrictions, natural barriers or other existing conditions, the enforcing agency determines that compliance with the 48-inch clear sidewalk width would create an unreasonable hardship, the clear width may be reduced to 36 inches. CBC § 11B-403.5.1 exception. Here, the path of travel from pedestrian ramp to entrance has only a clear width of 44 inches at the trash can and a clear width of only 35 inches to 39 inches at the propane storage.

54. A public accommodation must maintain in operable working condition those features of its facilities and equipment that are required to be readily accessible to and usable by persons with disabilities. 28 C.F.R. § 36.211(a).

55. Here, the failure to ensure that the accessible facilities were available and ready to be used by the plaintiff is a violation of the law.

56. Given its location and options, plaintiff will continue to desire to patronize the Store but he has been and will continue to be discriminated

against due to the lack of accessible facilities and, therefore, seeks injunctive relief to remove the barriers.

**II. SECOND CAUSE OF ACTION: VIOLATION OF THE UNRUH CIVIL RIGHTS ACT** (On behalf of Plaintiff and against all Defendants.) (Cal. Civ. Code § 51-53.)

57. Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

58. Because the defendants violated the plaintiff's rights under the ADA, they also violated the Unruh Civil Rights Act and are liable for damages. (Cal. Civ. Code § 51(f), 52(a).)

59. Because the violation of the Unruh Civil Rights Act resulted in difficulty, discomfort or embarrassment for the plaintiff, the defendants are also each responsible for statutory damages, i.e., a civil penalty. (Cal. Civ. Code § 55.56(a)-(c).)

60. Although the plaintiff was markedly frustrated by facing discriminatory barriers and this frustration possibly qualifies as an emotional distress injury, even manifesting itself with minor and fleeting physical symptoms, the plaintiff does not value this very modest frustration and physical personal injury greater than the amount of the statutory damages.

**PRAYER**:

Wherefore, Plaintiff prays that this Court award damages and provide relief as follows:

1. For injunctive relief, compelling Defendants to comply with the Americans with Disabilities Act and the Unruh Civil Rights Act. Note: the

plaintiff is not invoking section 55 of the California Civil Code and is not seeking injunctive relief under the Disabled Persons Act at all.

2. Damages under the Unruh Civil Rights Act, which provides for actual damages and a statutory minimum of $4,000.

3. Reasonable attorney fees, litigation expenses and costs of suit, pursuant to 42 U.S.C. § 12205; and Cal. Civ. Code §§ 52.

Dated: April 2, 2018

CENTER FOR DISABILITY ACCESS

By: /s/ Elliott Montgomery
Elliott Montgomery, Esq.
Attorney for plaintiffs